IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE DISTRICT OF SOUTH CAROLINA
GREENVILLE DIVISION

| | |
|---|---|
| Aedan McCarthy, )<br>)<br>Petitioner, )<br>)<br>v. )<br>)<br>Michael Pettiford, Warden - )<br>FCI-Bennettsville, )<br>)<br>Respondent. )<br>) | Civil Action No.8:07-243-MBS-BHH<br><br>**REPORT AND RECOMMENDATION**<br>**OF MAGISTRATE JUDGE** |

The petitioner, a federal prisoner, seeks relief pursuant to Title 28, United States Code, Section 2241. This matter is before the Court on the respondent's motion for summary judgment.

Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Local Rule 73.02(B)(2)(c), D.S.C., this magistrate judge is authorized to review posttrial petitions for relief and submit findings and recommendations to the District Court.

The petitioner brought this habeas action on January 25, 2007. On April 10, 2007, the respondent moved for summary judgment. By order filed April 11, 2007, pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), the petitioner was advised of the summary judgment dismissal procedure and the possible consequences if he failed to adequately respond to the motion. On June 1, 2007, the petitioner filed a response.

## PROCEDURAL FACTS

The petitioner is currently a federal prisoner housed in the Federal Correctional Institution ("FCI") in Bennettsville. The petitioner was sentenced on January 10, 1995, in the United States District Court for the District of Maine to 387 months imprisonment and three years supervised release for conspiracy to commit bank robberies, armed bank robbery, use of a firearm during the commission of a violent crime, and violation of the Armed Career Criminal Act. The petitioner was also ordered to pay $6,700 in restitution.

The petitioner has a projected release date of May 21, 2021, via good conduct time credit. (Pet. Attach. 4 - Judgment & Commitment.)

On December 1, 2005, the petitioner was transferred to the FCI-Bennettsville. (Pet. at 10; Defs.' Mem. Supp. Summ. J. Mot. Ex. 2 - Decl. Tonia Keyes.) At that time, the BOP's records reflected that petitioner's financial obligation to repay his restitution was "deferred." (*Id.*) At that time, the petitioner had an outstanding balance of $4,708.15. (Pet. Attach. 4; Defs.' Mem. Supp. Summ. J. Mot. Ex. 2.)[1]

On April 24, 2006, the United States Attorney's Office for the District of Maine ("USAO-DMe") served petitioner a Notice of Intent to Offset, which is a collection mechanism used by the government. (Defs.' Mem. Supp. Summ. J. Mot. Ex. 4.) On May 8, 2006, the USAO-DMe, then wrote a letter to Tonia Keyes, the Correctional Counselor at FCI-Bennettsville and informed Keyes that when the petitioner was sentenced on January 10, 1995, the sentencing court had ordered petitioner to pay non-federal restitution in the amount of $6,700.00. (Pet. at 9; Defs.' Mem. Supp. Summ. J. Mot. Ex. 5.) The letter stated the petitioner had paid $1,991.85 and had an outstanding balance of $4,708.15 and that the BOP computerized data base, SENTRY, incorrectly showed the petitioner's financial responsibility had been completed. (Defs.' Mem. Supp. Summ. J. Mot. Ex. 5)

On May 16, 2006, the United States Department of Justice ("USDOJ") sent the petitioner a letter stating that he had been ordered to pay restitution in the amount of $6,700.00 at sentencing and was due. (*Id.* Ex. 6.) On May 25, 2006, Keyes spoke with the USAO-DMe and informed them that the petitioner claimed his debt was not due until after his incarceration was over. (Defs.' Mem. Supp. Summ. J. Mot. Ex. 2.) However,

---

[1] The $6,700 had been reduced by $1991.85 through the application of funds seized at the time of arrest. (Defs.' Mem. Supp. Summ. J. Mot. Ex. 6.)

Keyes stated the deferral in the BOP records was incorrect and she would correct the error. (*Id*.) She stated that she had informed the petitioner that he would be required to begin making payments and, if he refused, he would be subject to the denial of certain privileges. (Pet. at 10; Defs.' Mem. Supp. Summ. J. Mot. Ex. 2.)

On June 15, 2006, the petitioner filed a motion with the sentencing court in Maine to set the amount and payment schedule for restitution in his criminal case. (Defs.' Mem. Supp. Summ. J. Mot. Ex. 8.) He asked the court to set his restitution payments at $25.00 a month and order the payments are due only when he is employed in UNICOR. (*Id*.) At that time, the petitioner earned only $2.00 a month at his job as a compound orderly. (Pet'r's Aff. ¶ 17.) He currently earns $.76 per hour at his UNICOR job. (Pet'r's Mem. Opp. Summ. J. at 3.) He works approximately 7.5 hours a day, five days a week. (Defs.' Mem. Supp. Summ. J. Mot. Ex. 2.)[2]

On June 29, 2006, the petitioner signed an Inmate Financial Contract agreeing to begin making quarterly payments of $25.00 beginning September 2006. (Defs.' Mem. Supp. Summ. J. Mot. Ex. 9.) On July 6, 2006, the government filed objections to petitioner's motion for the court to set a payment schedule. (*Id*. Ex. 10.)

On July 6, 2006, the petitioner filed a motion to stay the restitution payments with the sentencing court in Maine. (*Id*. Ex. 11.) The petitioner alleged that he had been forced to sign the "Inmate Financial Contract" under duress because if he had not signed it he would have been placed on "Refused Status." *(Id*.) On July 27, 2006, the government filed objections to the petitioner's motion to stay the restitution payments. (Defs.' Mem. Supp. Summ. J. Mot. Ex. 12.)

---

[2]This equates to approximately $114 per month.

3

On July 28, 2006, the United States District Court for the District of Maine Judge D. Brock Hornby denied the petitioner's motion to set the amount of payments. (*Id*. Ex. 13.) The court stated that it was "up to the Bureau of Prisons to determine what monthly payments the defendant can afford while in prison." *(Id.)* On that same day, Judge Hornby also denied the petitioner's motion for a stay of the restitution payments. (*Id*. Ex. 14.) On September 12, 2006, the petitioner made his first payment of $25.00 and he has made two more quarterly payments of $25.00 since September 2006. (*Id*. Ex. 2 and 15.)

The petitioner alleges the BOP is illegally setting the amount and timing of his restitution payments. He contends that only the sentencing court has the right to set the amount and timing of his restitution payments. He is seeking a deferment of his restitution payments until the judge who sentenced him sets the amount and timing of his restitution payments. (Pet. at 8.)

## APPLICABLE LAW

### SUMMARY JUDGMENT STANDARD

Rule 56 of the Federal Rule of Civil Procedure states as to a party who has moved for summary judgment:

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.

Accordingly, to prevail on a motion for summary judgment, the movant must demonstrate that (1) there is no genuine issue as to any material fact; and (2) that he is entitled to summary judgment as a matter of law. As to the first of these determinations, a fact is deemed "material" if proof of it existence or nonexistence would affect the disposition of the case under the applicable law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). An issue of material fact is "genuine" if the evidence offered is such that a reasonable jury

4

might return a verdict for the non-movant. *Id.* at 257. In determining whether a genuine issue has been raised, the court must construe all inferences and ambiguities against the movant and in favor of the non-moving party. *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962).

The party seeking summary judgment shoulders the initial burden of demonstrating to the court that there is no genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the movant has made this threshold demonstration, the non-moving party, to survive the motion for summary judgment, may not rest on the allegations averred in his pleadings. Rather, the non-moving party must demonstrate that specific, material facts exist which give rise to a genuine issue. *Id.* at 324. Under this standard, the existence of a mere scintilla of evidence in support of the petitioner's position is insufficient to withstand the summary judgment motion. *Anderson*, 477 U.S. at 252. Likewise, conclusory allegations or denials, without more, are insufficient to preclude the granting of the summary judgment motion. *Ross v. Communications Satellite Corp.*, 759 F.2d 355, 365 (4th Cir. 1985).

## **DISCUSSION**

As stated above, the petitioner alleges the BOP is illegally setting the amount and timing of his restitution payments. He contends that only the sentencing court has the right to set the amount and timing of his restitution payments and he is seeking a deferment of his restitution payments until the judge who sentenced him sets the amount and timing of his restitution payments. The petitioner specifically states he is not arguing that the IFRP is unconstitutional. (Pet'r's Mem. Opp. Summ J. at 4.)

When the petitioner was sentenced on January 10, 1995, the U.S. District Court for the District of Maine ordered petitioner to pay restitution in the amount of $6,700.00. (Defs.' Mem. Supp. Summ. J. Mot. Ex. 5.) After crediting the petitioner with funds which were

seized during his arrest, the petitioner owed a balance of $4,700.15.  (*Id*.)  The sentencing court stated:  "The remaining balance shall be due in instalments to commence 30 days after this judgment.  Since this judgment imposes a period of incarceration, payment shall be due during the period of incarceration."  (*Id.*)

In *United States v. Miller*, 77 F.3d 71, 77-78 (4th Cir.1996), the sentencing court in a written judgment ordered that Miller make payments toward his $3,000 fine and the fifty-dollar restitution at such times and in such amounts as the BOP and/or the Probation Office may direct.  *Id*. at 74.  The Fourth Circuit Court of Appeals held a district court may not delegate its authority to set the amount and timing of fine payments to the Bureau of Prisons or the probation officer.  *Id*. at 78.  The Court reasoned that "[t]he statutory duty imposed upon district courts to fix the terms of a fine must be read as exclusive because the imposition of a sentence, including the terms of probation or supervised release, is a core judicial function."  *Id.* at 78; see also 18 U.S.C. § 3572(d).

Recently, in *U.S. v. Caudle*, 2008 WL 110945 (4th Cir. 2008)(unpublished), the Fourth Circuit held a district court had set the amount and timing of the criminal monetary penalties by ordering payment due immediately.  Likewise, in this case, the sentencing court set the amount and timing of the petitioner's criminal fines by ordering that the restitution be paid commencing thirty days after judgment and payment was to be due during petitioner's period of incarceration.  Directing the amount of payment due during the petitioner's imprisonment sets "the length of time over which scheduled payments will be made." 18 U.S.C. § 3572(d)(2).  Further, the judgment in this case, unlike the judgment involved in *Miller*, does not affirmatively delegate the task of setting payment amounts to the BOP.  The sentencing court merely permitted the petitioner to pay restitution through the BOP's financial program.  Accordingly, the BOP has not illegally set the time and payments for the payment of the petitioner's restitution in violation of *Miller*.

Furthermore, in *Caudle*, the Court held that participation in the IFRP does not violate *Miller*. *Id*. at *2 (citing *Matheny v. Morrison*, 307 F.3d 709, 712 (8th Cir.2002) (holding that BOP has discretion to place inmate in IFRP when sentencing court has ordered immediate payment of court-imposed fine)(*citing McGhee v. Clark*, 166 F.3d 884, 886 (7th Cir.1999), and *Montano-Figueroa v. Crabtree*, 162 F.3d 548, 549-50 (9th Cir.1998)).

## **CONCLUSION**

Wherefore, it is RECOMMENDED that the respondent's Motion for Summary Judgment be GRANTED and the habeas petition be DISMISSED with prejudice.

IT IS SO RECOMMENDED.

s/Bruce Howe Hendricks<br>
United States Magistrate Judge

February 11, 2008
Greenville, South Carolina

**The petitioner's attention is directed to the important notice on the next page.**

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Court Judge.  Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections.  In the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must "only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation."  *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005).

Specific written objections must be filed within ten (10) days of the date of service of this Report and Recommendation.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).  The time calculation of this ten-day period excludes weekends and holidays and provides for an additional three (3) days for filing by mail.  Fed. R. Civ. P. 6(a) & (e).  Filing by mail pursuant to Fed. R. Civ. P. 5 may be accomplished by mailing objections to:

> Larry W. Propes, Clerk
> United States District Court
> P.O. Box 10768
> Greenville, South Carolina 29603

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.**  28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985).